1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JACOB FRIEDMAN,                              Case No.  24-cv-00371-DMR

8                      Plaintiff,
                                                  **ORDER ON MOTION TO DISMISS**
9           v.
                                                  Re: Dkt. No. 22
10   CITY OF FAIRFAX, et al.,

11                     Defendants.

12          Plaintiff Jacob Friedman brings this complaint against Defendants City of Fairfax ("the

13   Town"), the Office of Building Inspector of the Town of Fairfax ("Inspector Office"), the

14   Planning Commission of the Town of Fairfax ("Planning Commission"), Mark Lockaby, and

15   Linda Neal (collectively "Defendants").  The court refers to the Town, Inspector Office, and

16   Planning Commission as "Fairfax Defendants."  Plaintiff alleges that Defendants deprived

17   Plaintiff of his right to construct his home at 79 Wood Lane in Fairfax, CA (the "Property") by,

18   among other things, unlawfully suspending his building permit (the "Permit") and denying

19   Plaintiff a right to administrative appeal of the suspension.  [Docket No. 19 (First Amended

20   Complaint, "FAC") ¶ 1.]  Defendants move to dismiss the FAC for failure to state a claim.

21   [Docket No. 22 (Motion to Dismiss, "Mot.").]   The court held a hearing on June 27, 2024.

22   For the following reasons, the motion is granted.

23   I.     BACKGROUND

24          A.      Statement of Facts

25          Plaintiff makes the following allegations in the FAC, which the court takes as true for

26   purposes of this motion.[1]  Plaintiff owns the real property located at 79 Wood Lane in Fairfax,

27   _____

28   [1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
     of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

United States District Court
Northern District of California

1    CA.  FAC ¶ 13.  On July 6, 2021, Plaintiff submitted an application to the Town for the

2    construction of a house and an Accessory Dwelling Unit ("ADU") at the Property; the

3    construction project will be referred to as the "Project."  *Id.* at ¶ 14.  Over the next six months,

4    Town staff "delayed and otherwise interfered with" the approval of Plaintiff's application.  *Id.* at ¶

5    15.  For example, Fairfax Principal Planner Linda Neal threatened to recommend denial of

6    Plaintiff's application unless he agreed to her demands that the house be lower in height and lower

7    to the ground, even though it was already under the height limit of the Fairfax Planning Code.  *Id.*

8    During these six months, Plaintiff attended many Town meetings where he expressed his views

9    that Fairfax employees were being unreasonable, unfair, and directing animus towards him.  *Id.* at

10   ¶ 16.  Members of the Town administration would "chastise [Plaintiff] for his comments and

11   demand that he not state his critiques to the Town."  *Id.*  Plaintiff believes that, in retaliation for

12   his comments during Town meetings, Defendants "delayed any approvals for [Plaintiff's] Project,

13   and required him to complete many additional layers of review that other Town residents, on

14   information and belief, did not have to complete."  *Id.*

15        On January 20, 2022, the Planning Commission approved Plaintiff's application for a

16   building permit.  *Id.* at ¶ 17, Ex. 1.  However, Mark Lockaby, a Fairfax Building Official,

17   submitted Plaintiff's approved construction plans to the Town Engineer (an outside contractor) for

18   further review prior to approval of the Permit.  The Town finally issued the Permit on August 4,

19   2022.  *Id.* at ¶ 18, Ex. 2.  Plaintiff believes this further review and delay were conducted in bad

20   faith with the intention of preventing Plaintiff from proceeding with the Project.  *Id.* at ¶ 18.

21        Plaintiff began work on the Project.  Although not clearly stated in the FAC, Plaintiff's

22   counsel confirmed at oral argument that certain aspects of this work did not conform to the

23   construction plans approved under the Permit.  In June 2023, after a substantial portion of the

24   Project had been completed, Lockaby requested and Plaintiff provided documents detailing the

25   changes that Plaintiff made to the construction plans.[2]  FAC ¶ 24.  Specifically, Plaintiff detailed

26   _____

27   (per curiam) (citation omitted).

28   [2] Plaintiff attached the documents Plaintiff provided to Lockaby as Exhibit 3 of the original
     complaint [Docket No. 1-3] but did not re-attach the exhibit in the FAC.  The court must consider

United States District Court
Northern District of California

1    three changes depicted in the revised plans: a) a portion of the basement was now an ADU; b) a

2    portion of the top floor was now a junior accessory dwelling unit ("JADU"), including an enclosed

3    upper deck and a new exterior stairway; and c) the front low pitched roof was eliminated and

4    replaced by a roof deck above a portion of the lower floor and even with the top floor.  *Id.* at ¶

5    24(a)-(c).  Lockaby instructed Plaintiff to obtain approval from the Planning Commission for the

6    last two changes (the JADU and the roof deck) and to stop work on those two items until

7    obtaining approval.  *Id.* at ¶ 25.  Lockaby stated that Plaintiff could continue work on the rest of

8    the Project other than those two items.  *Id.*  Plaintiff did not agree with Lockaby, asserting that he

9    did not need to request approval for minor changes to construction until conclusion of the Project.

10   *Id.* at ¶ 26.

11          On June 8, 2023, Lockaby issued an order to stop work ("OSW").[3]  *Id.* at ¶ 27.  The cause

12   of the OSW's issuance was listed as "CONSTRUCTION NOT APPROVED."  *Id.*  Plaintiff

13   understood the OSW to allege that he was constructing the Project in violation of Title 17 of the

14   Fairfax Town Code.  *Id.*  On June 9, 2023, Plaintiff attempted to submit an appeal of Lockaby's

15   decision to the Town under Fairfax Town Code § 17.036.010, et seq.  *Id.* at ¶ 29.  The Town

16   refused to consider the appeal and returned Plaintiff's payment for the appeal in August 2023.  *Id.*

17   at ¶ 30.  Plaintiff's counsel also wrote to Town Counsel Janet Coleson, offering to cease work on

18   the two at-issue changes from the approved plan and agreeing to request a modification from the

19   Planning Commission within 60 days after June 23, 2023.  *Id.* at ¶ 31.  The Town's counsel did

20   not respond to this offer.  *Id.*  In the meantime, Plaintiff continued work on the Project, believing

21   that his appeal of the OSW would stay its enforcement pursuant to Fairfax Town Code §

22   17.036.030.  *Id.*

23          On July 20, 2023, Lockaby completed an electrical inspection of the Project, where he

24

25   each complaint as standing on its own and cannot consider Plaintiff's attachments to the original
     complaint.  *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (finding that the
26   amended complaint "supercedes the original" and the original complaint is "treated thereafter as
     non-existent").
27

28   [3] The FAC refers to this as a "Red Tag."  FAC ¶ 27.  Plaintiff's counsel clarified at the hearing
     that he used the term "Red Tag" interchangeably with OSW.

found that the electrical system was in working order and met all code requirements. *Id.* at ¶ 32. However, Lockaby refused to issue a "Green Tag," a type of approval that would allow Plaintiff to connect the electrical system to PG&E. *Id.* Lockaby stated that Linda Neil had to sign off on the Green Tag before it would be issued. *Id.* Counsel for the Town later represented to Plaintiff's counsel that the Town was withholding the Green Tag to coerce Plaintiff to submit new construction plans and secure approval from the Planning Commission, and that the Town often withheld Green Tags to extract concessions from permit holders for reasons unrelated to the electrical system. *Id.* at ¶ 33.

From July 20, 2023 to August 11, 2023, Plaintiff would call Lockaby for various inspections of the Project, but Lockaby would not respond. *Id.* at ¶ 37. However, when Plaintiff called from an anonymous number, Lockaby did respond. *Id.* Plaintiff believes Lockaby was ignoring his phone calls in bad faith. *Id.*

On August 11, 2023, Lockaby suspended Plaintiff's Permit without a hearing. *Id.* at ¶ 38. He explained he had observed Plaintiff constructing "the rear stairs." *Id.* He stated that Plaintiff had agreed to obtain approval from the Planning Commission before continuing to construct the rear stairs; Plaintiff denies he ever agreed to do so. *Id.* Lockaby said he was suspending the Permit under California Building Code 105.6 because the changes at issue had not been approved, so the work being done was based on "incorrect, inaccurate and incomplete information." *Id.* at ¶ 39. On August 14, 2023, a second OSW was posted at the Project, with the listed cause being "suspension of building permit." *Id.* at ¶ 40.

Plaintiff believed that the OSW and the suspension of his Permit were unlawful. He informed the Town of his belief that the Town could not lawfully suspend his Permit without prior notice and hearing. *Id.* at ¶ 43. The Town responded by stating that Plaintiff could appeal the suspension of the Permit to the Town Council, but Plaintiff alleges that the Fairfax Town Code does not provide for an appeal process. *Id.* Based on his belief that the permit suspension was unlawful, Plaintiff resumed construction on August 23, 2023. *Id.* at ¶ 45. On August 25, 2023, Defendants caused a police offer to arrive at the Property, who informed Plaintiff's employees that they would be cited and arrested if they did not stop working. *Id.* at ¶ 47. Plaintiff was forced to

United States District Court
Northern District of California

1    lay off his work crew and stop construction.  *Id.* at ¶ 48.

2         On August 28, 2023, Plaintiff filed a writ of mandamus action in state court (Marin County

3    Superior Court Case No. CV0000737).[4]  *Id.* at ¶ 50.  On October 31, 2023, the court found that

4    "the Town owed a mandatory duty to provide Friedman with a hearing before suspending the

5    Permit," and ordered that the suspension of the Permit and the second OSW be set aside.  *Id.*  The

6    Town failed to set aside the OSW.  *Id.* at ¶¶ 50, 54.

7         On January 11, 2024, the Planning Commission held a hearing on Plaintiff's Permit and

8    suspended it until May 5, 2024.  *Id.* at ¶¶ 54-57.  At the hearing, Plaintiff was not given the

9    opportunity to compel the testimony of witnesses or cross-examine witnesses.  *Id.* at ¶ 55.

10   Additionally, attorneys from the same law firm represented Town staff who were advocating for

11   suspension of the permit as well as the Planning Commission that was deciding on the suspension,

12   which Plaintiff argues created the appearance of bias.  *Id.* at ¶ 56.  On January 16, 2024, Plaintiff

13   attempted to appeal the Planning Commission's decision, but Linda Neal refused to accept the

14   appeal.  *Id.* at ¶ 58.  The Town later represented that the temporary suspension of the Permit was

15   an "unappealable" decision.  *Id.* at ¶ 60.  Instead, Plaintiff was informed that the Town Council

16   would hold a hearing on the suspension of the Permit as a "directed referral."  *Id.* at ¶ 61.  Plaintiff

17   contends that the Town Council has no jurisdiction to take a directed referral in this instance.  *Id.*

18        On February 29, 2024, the Town Council heard the directed referral.  *Id.* at ¶ 62.  At that

19   hearing, Plaintiff was again not given the opportunity to compel the testimony of witnesses or

20   cross-examine witnesses.  *Id.* at ¶ 63.  Janet Coleson, an attorney representing the Town staff who

21   advocated for suspension of the permit, also acted as a legal advisor to the Town Council.  *Id.*

22   Although not clearly stated in the FAC, Plaintiff's counsel confirmed at oral argument that the

23   Permit was revoked at the February 2024 hearing.  Plaintiff argues that both the January 11, 2024

24   and February 29, 2024 hearings violated due process.

25

26

27   ─────────────────────
     [4] The Marin County Superior Court's order is attached to the original complaint as Exhibit 15.  As
     stated above, this court will not consider the order because Plaintiff did not attach it to the FAC
28   and did not request judicial notice of it.  The court will only consider facts alleged by Plaintiff in
     the FAC itself.

### B.     Procedural History

Plaintiff filed the complaint on January 22, 2024.  [Docket No. 1.]  He filed the FAC on March 19, 2024.  The FAC asserts six claims: 1) violation of the Fifth Amendment for a taking of property without due compensation against Fairfax Defendants; 2) violations of the Fifth and the Fourteenth Amendments under 42 U.S.C. section 1983 against all Defendants; 3) inverse condemnation under article I, section 19 of the California Constitution against Fairfax Defendants; 4) negligence against all Defendants; 5) writ of mandate against Fairfax Defendants; and 6) violation of California Civil Code section 52.1 against all Defendants.  FAC ¶¶ 66-116.

Defendants filed this motion to dismiss on April 2, 2024.[5]  Plaintiff opposes.  [Docket No. 25 (Opp'n).]  Defendants filed a reply.  [Docket No. 27 (Reply).]

## II.     LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.

---

[5] Defendant filed a request for judicial notice of sections of the Fairfax Town Code, sections of the California Building Code, resolutions signed by the Town, minutes from a September 13, 2023 Town Council meeting, a Planning Commission staff report from the January 11, 2024 hearing, and a Town Council staff report from the February 29, 2024 hearing.  [Docket No. 23.]  The court does not rely on these exhibits to reach its decision and therefore denies the request as moot.

United States District Court
Northern District of California

2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,' " *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## III.   DISCUSSION

### A.   The Fifth Amendment Takings Clause

The FAC alleges two types of takings: 1) each time the Town issued an OSW; and 2) each time the Town suspended the Permit.[6] FAC ¶¶ 67-68. Defendants argue that Plaintiff has failed to allege a claim under the Fifth Amendment Takings Clause. Mot. 14-18.

Plaintiff brings this claim against all three Fairfax Defendants (the Town, Inspector Office,

---

[6] The FAC also appears to allege that the Town's refusal to accept Plaintiff's appeal of the second Permit suspension on January 16, 2024 amounted to a taking. FAC ¶¶ 67-68. The parties did not discuss this theory; the court therefore does not address it.

and Planning Commission).  However, the FAC fails to identify the actions taken by each specific Defendant which would make them liable under the Fifth Amendment.  The parties' briefs were also unclear on this point and only discussed actions taken by the Town.  For this order, the court construes the FAC as alleging a takings claim against the Town.

### 1.    Vested Property Interest

The Fifth Amendment Takings Clause provides: " . . . nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  "In order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected. . . . Only if he does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment."  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).

Plaintiff alleges that by issuing the OSWs and suspending the Permit, the Town took his Permit and his Property without just compensation.  FAC ¶ 67.  Defendants do not dispute that Plaintiff has a property interest in the Property.  However, they argue that Plaintiff had no property interest in maintaining his Permit after exceeding its scope.  Mot. 14-15.  They assert that the Town had the right to stop work and suspend the Permit without compensation because Plaintiff concededly violated its terms.  *Id.*

The Supreme Court held that "intangible interests" such as permits can be property for purposes of the Takings Clause.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984).  The existence of a property right in an intangible interest is a question of state law.  *Id.*; *see also Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir. 2011) ("whether a property right *exists* in the entry permits [] is a question of state law") (emphasis in original).  "When presented with a question of state law, including a question as to the existence or extent of a property right, we must apply a relevant decision by the state's highest court."  *Vandevere*, 644 F.3d at 966.  The court turns to California law to determine if Plaintiff has a property right in the Permit.

The California Supreme Court held that "if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the

United States District Court
Northern District of California

1    government, he acquires a vested right to complete construction in accordance with the terms of

2    the permit." *Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 791 (1976).  The

3    property owner's interest in building a structure vests after acquiring a permit to build that

4    structure.  *Id.* at 797.  In *Avco*, the petitioner argued it had a vested interest in building a structure

5    even before acquiring a building permit.  *Id.* at 795.  It posited that the building permit should not

6    be necessary because it had already obtained all of the "discretionary" government approvals

7    necessary to build the structure, and at that point, the issuance of the building permit was "merely

8    a ministerial act."  *Id.* at 795.  The Court rejected this argument.  "A landowner which has not

9    even applied for a permit cannot be in a better position merely because it had previously received

10   permission to subdivide its property and made certain improvements on the land."  *Id.*  The Court

11   found that even though the petitioner reasonably expected it would be able to construct the

12   buildings based on the previously granted approvals and had made substantial investments for this

13   purpose, it failed to secure "a vested right to build structures which the county did not approve and

14   as to which it had no detailed information."  *Id.* at 797.  The Court further determined that work

15   previously undertaken on a structure cannot form the basis of a "vested right to build a structure

16   which does not comply with the laws applicable at the time a building permit is issued."  *Id.* at

17   793.  In a later case, the California Supreme Court cited *Avco* and noted: "[i]t is well established

18   that the rights which may 'vest' through reliance on a government permit are no greater than those

19   specifically granted by the permit itself."  *Santa Monica Pines, Ltd. v. Rent Control Bd.*, 35 Cal.

20   3d 858, 866 (1984).

21          Here, Plaintiff has not pleaded a vested interest in the Permit because as the FAC makes

22   clear, Plaintiff changed the Project in a way that did not comply with the Permit as it was issued.

23   FAC ¶ 24.  The terms of the Permit include this provision: "Any changes . . . made to the

24   approved set of plans will require a modification of Application # 21-17.  Modifications that do

25   not significantly change the project . . . *may* be approved by the Planning Director.  Any

26   construction based on job plans that have been altered without the benefit of an approved

27   modification of Application 21-17 will result in the job being immediately stopped and red

28   tagged."  [Docket No. 19-1 (Permit Terms) at A1.2A § 15 (emphasis in original).]  Although

9

1    Plaintiff performed substantial work under the Permit, he has no vested right in the Permit because

2    he admittedly exceeded its scope.

3         Plaintiff disputes that his deviations from the approved plan amounted to violations of the

4    terms of the Permit.  According to Plaintiff, he was entitled to make changes without prior

5    approval under the California Building Standards Code, because the law "contemplates changes

6    being submitted at the *conclusion* of the work, not . . . before any minor change is made."  Opp'n

7    6-7 (emphasis in original).  Plaintiff cites Building Code § 107.4, which says: "any changes made

8    during construction that are not in compliance with the approved construction documents shall be

9    resubmitted for approval as an amended set of construction documents."[7]  This language does not

10   support Plaintiff's argument.  The Building Code does not state that Plaintiff has the right to wait

11   until he completes all construction before submitting any changes for approval.  Indeed, such a

12   rule would be absurd—the point of submitting changes for approval is to determine if the changes

13   should be built or not.  It makes no sense to require the Town to wait until the structure is already

14   built before it can deny permission to build it.  Moreover, California case law precludes Plaintiff's

15   argument.  A property owner has no vested right in a building project which the county "did not

16   approve" and "had no detailed information" about, *see Avco*, 17 Cal. 3d at 791, and vested rights

17   in a permit are "no greater than those specifically granted by the permit itself," *see Santa Monica*

18   *Pines,* 35 Cal. 3d at 866.

19         Plaintiff next argues that Defendants should be estopped from challenging the unapproved

20   changes because Plaintiff continued to work on the Project in detrimental reliance on Lockaby's

21   statements and actions.  Opp'n 7.  "Unlike the vested rights doctrine, estoppel can sometimes be

22   used to force a local agency to allow compliance with an otherwise unlawful permit."  *Attard v.*

23   *Bd. of Supervisors of Contra Costa Cnty.*, 14 Cal. App. 5th 1066, 1079 (2017).  "The doctrine of

24   equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may

25   not deny the existence of a state of facts if he intentionally led another to believe a particular

26

27    _____

[7] The 2022 Building Code section 107 can be accessed at:
28   https://codes.iccsafe.org/content/CABC2022P1/chapter-1-scope-and-
administration#CABC2022P1_Ch01_SubCh02_Sec107.

United States District Court
Northern District of California

circumstance to be true and to rely upon such belief to his detriment." *City of Goleta v. Superior Ct.*, 40 Cal. 4th 270, 279 (2006) (quoting *Strong v. County of Santa Cruz*, 15 Cal. 3d 720, 725 (1975)). "Equitable estoppel 'will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy.'" *Id.* (quoting *Hughes v. Board of Architectural Examiners*, 17 Cal. 4th 763, 794 (1998)).

Plaintiff has not established the elements of estoppel, particularly against a governmental body. "The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Id.* Plaintiff alleges that Lockaby found out about the unapproved changes in June 2023, that Lockaby told Plaintiff he could continue to work on the Project, and that Plaintiff did continue to work on the Project. Opp'n 7; FAC ¶¶ 25, 31. However, the FAC makes clear that Lockaby also told Plaintiff to obtain approval for the disputed changes and to not complete any further work on the changes until approved. FAC ¶ 25. Plaintiff never alleges that he stopped working on the changes or that he submitted the changes for approval. In fact, the FAC states that he "asserted his right to continue construction and submit the minor changes to the plan at the conclusion of the Project," in direct opposition to Lockaby's request. *Id.* at ¶ 26. Plaintiff cannot plead equitable estoppel by engaging in selective hearing. Plaintiff has not pleaded detrimental reliance.

Finally, Plaintiff argues he retained a vested interest in the Permit because the Town did not follow due process when it suspended the Permit. Opp'n 7. As discussed below, due process rights are distinct from property rights under the Fifth Amendment.[8]

---

[8] Plaintiff's cited authority does not support his position. In *Trans-Oceanic Oil Corp. v. City of Santa Barbara*, 85 Cal. App. 2d 776 (1948), the court first found that the plaintiff retained a vested interest in the permit, and then separately found that the revocation of the permit violated due process. Contrary to Plaintiff's argument, the case does not stand for the proposition that the violation of due process in itself would be enough to state a takings claim. Indeed, the court stated that due process is its own standard which could apply even if there were no vested interest in the permit. *Id.* at 797. The case also does not define property interests for the purposes of federal due process.

1    In sum, Plaintiff has failed to plausibly allege he has a vested interest in the Permit and

2    amendment is futile.  Therefore, Plaintiff's takings theory based on a vested interest in the Permit

3    is dismissed without leave to amend.

4    At oral argument, Plaintiff appeared to assert a new theory that he has a vested right in

5    constructing just the portions of the Project that were approved in the Permit.  Plaintiff failed to

6    coherently allege this in the FAC, brief it in his opposition, or explain it during the hearing.  Given

7    Plaintiff's failure to flesh out this theory, the court cannot currently determine that amendment

8    would be futile.  Therefore, Plaintiff is granted leave to amend his complaint to clearly plead this

9    new theory if he wishes to pursue it.

## 2.    Regulatory Taking

10   The parties do not dispute that Plaintiff has a property interest in the real property located

11   at 79 Wood Lane in Fairfax, CA.  Plaintiff argues this Property was taken from him without just

12   compensation when the Town suspended the Permit, because the Town's action deprived Plaintiff

13   of all economic value in the Property.  Opp'n 5-11.

15   The classic example of a taking is when the "government directly appropriates private

16   property or ousts the owner from his domain."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539

17   (2005).  This is a "per se" taking.  *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1281 (9th Cir.

18   2021) (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021)).  The Supreme Court has

19   also recognized that "if regulation goes too far it will be recognized as a taking."  *Bridge Aina*

20   *Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (quoting *Pa. Coal Co. v.*

21   *Mahon*, 260 U.S. 393, 415 (1922)).  Plaintiff advances two theories of regulatory taking.  The first

22   is based on the *Lucas* rule, under which a taking exists where "regulation denies all economically

23   beneficial or productive use of land."  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).

24   Plaintiff's second theory is under the *Penn Central* balancing test, where the court weighs several

25   factors to determine if economic injuries caused by public action should be compensated by the

26   government.  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

### a.    *Lucas*

28   The *Lucas* rule is "confined to the 'extraordinary circumstance when no productive or

United States District Court
Northern District of California

economically beneficial use of land is permitted.' . . . Compensation is required in such a case unless the government can show that underlying principles of state property or nuisance law would have led to the same outcome as the challenged regulation." *Bridge Aina Le'a*, 950 F.3d at 626 (citing *Lucas*, 505 U.S. 1003, 1017). "Anything less than a 'complete elimination of value,' or a 'total loss' . . . would require the kind of analysis applied in *Penn Central*." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330 (2002) (citing *Lucas*, 505 U.S. at 1019–1020).

Plaintiff argues that the Property has been rendered valueless because it "has upon it a half-built home," and Plaintiff has "no ability to build a home there until the Town acts and reinstates his Permit (or otherwise acts to allow him to construct or complete his home)." Opp'n 8-9. This is far from a "complete elimination of value." *Tahoe-Sierra*, 535 U.S. at 330. Essentially Plaintiff argues that "the inability to pursue a particular development and to obtain its value [is] a total taking," a view which the Ninth Circuit has expressly rejected. *See Bridge Aina Le'a*, 950 F.3d at 630.

The *Lucas* rule does not apply. As such, the court does not reach Defendants' other arguments on this issue.

### b.    *Penn Central*

"There is no set formula for determining when an economic injury occasioned by regulation must be compensated by government." *Am. Sav. & Loan Ass'n v. Marin Cnty.*, 653 F.2d 364, 368 (9th Cir. 1981). The Supreme Court has identified several factors that are "particularly significant in determining whether a regulation effects a taking," including "the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action." *Lingle*, 544 U.S. at 528–29. These first two factors are the "primary factors" in applying the *Penn Central* balancing test. *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630 (9th Cir. 2020).

Plaintiff asserts that all three factors weigh toward finding a regulatory taking. First, Plaintiff argues that he lost "nearly all economic value from the Property for the period of time of the suspension" of his Permit. Opp'n 9. Second, he contends that he had an investment-backed

United States District Court
Northern District of California

13

1    expectation to "procure a Permit to achieve the construction of a home," and an expectation that

2    "the Town would follow its own laws and procedures." *Id.* at 10.  Third, he asserts that the

3    suspension of his Permit and the order to stop work "affects only [Plaintiff] and precludes him

4    from completing any further work on the Property," which is the equivalent of a physical

5    appropriation. *Id.*

6            Plaintiff has failed to plausibly plead a regulatory taking under *Penn Central.*  First,

7    Plaintiff's allegations regarding economic impact are conclusory.  *See, e.g.,* FAC ¶ 48 (OSW

8    "delayed the Project completion date and increased the cost of completing the Project"); ¶ 67

9    (Plaintiff "lost all economic value in that property when he could no longer construct a home on

10   the Property").  "[E]conomic impact is determined by comparing the total value of the affected

11   property before and after the government action."  *Colony Cove Properties, LLC v. City of

12   Carson*, 888 F.3d 445, 451 (9th Cir. 2018).  Plaintiff has not alleged the pre-deprivation value or

13   the post-deprivation value of the Property as a whole.  If Plaintiff is trying to base his regulatory

14   taking theory solely on the economic impact on the Project due to loss of the Permit, that is

15   insufficient.  Where "an owner possesses a full 'bundle' of property rights, the destruction of one

16   'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety."  *Id.* at

17   450 (citing *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979)).  The right to build the Project is only

18   one of the many rights Plaintiff has in his land.  Plaintiff has not alleged, for example, that he

19   cannot sell the land, build other structures on it, or use it for any other purpose.  Diminution of

20   value is a high standard to meet in the regulatory taking context, and Plaintiff falls far short of the

21   bar.  *See, e.g., MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013)

22   (finding that an 81% diminution in value was not sufficient economic loss to show a regulatory

23   taking).

24           Even if Plaintiff were able to plead sufficient economic impact, the Supreme Court has

25   "uniformly reject[ed] the proposition that diminution in property value, standing alone, can

26   establish a 'taking.'"  *Penn Central,* 438 U.S. at 131.  The second *Penn Central* factor examines

27   whether a distinct investment-backed expectation was entirely frustrated by the government

28   action.  "To form the basis for a taking claim, a purported distinct investment-backed expectation

1    must be objectively reasonable." *Colony Cove Properties, LLC v. City of Carson*, 888 F.3d 445,

2    452 (9th Cir. 2018).  This means the expectation must be "more than a 'unilateral expectation or

3    an abstract need.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005–06 (1984) (quoting *Webb's*

4    *Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980)).  In addition, the court

5    considers "the regulatory environment at the time of the acquisition of the property." *Bridge Aina*

6    *Le'a*, 950 F.3d at 634 (quoting *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331,

7    1345 (Fed. Cir. 2018)).  Here, Plaintiff makes a bare-bones assertion that he had an investment-

8    backed expectation to "procure a Permit to achieve the construction of a home." Opp'n 10.  This

9    ignores that the terms of the Permit expressly granted the Town authority to stop construction if

10   the construction deviated from the approved plans.  Permit Terms A1.2A § 15.  Plaintiff admits he

11   made unauthorized changes to his construction plans.  FAC ¶ 24.  Plaintiff's belief that he could

12   continue to benefit from the Permit even if he made unauthorized changes to the plans is a

13   unilateral assumption, not an objectively reasonable expectation.

14          Finally, the suspension and eventual revocation of Plaintiff's building permit cannot be

15   characterized as a "physical invasion by the government," because the government was not

16   acquiring resources to "facilitate a uniquely public function."  *See Penn Central*, 438 U.S. at 128

17   (citing United States v. Causby, 328 U.S. 256 (1946), in which the government destroyed the use

18   of claimant's land as a private chicken farm so that the airspace above the land could be used for

19   flying government planes).  The Town did not attempt to acquire or use any part of Plaintiff's

20   property for a public function.  Rather, the government action in this case more resembles a

21   "public program adjusting the benefits and burdens of economic life to promote the common

22   good."  *See Penn Central*, 438 U.S. at 124.[9]

23   _____

24   [9] Plaintiff also argues that the character of the permit suspension was like a physical taking
     because it affected only Plaintiff.  This resembles a substantive due process argument—that the
25   land use regulation arbitrarily singled him out—making it inappropriate for a takings analysis.  *See*
     *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540 (2005) (finding that "an inquiry in the nature of a
26   due process" test has "no proper place in our takings jurisprudence").  Besides, "[l]egislation
     designed to promote the general welfare commonly burdens some more than others." *Penn*
27   *Central*, 438 U.S. at 133.  For example, "zoning laws often affect some property owners more
     severely than others but have not been held to be invalid on that account." *Id.* at 133-34.
28

United States District Court
Northern District of California

Plaintiff cannot plausibly plead a regulatory taking.  Plaintiff's takings claim with regard to the Property is dismissed without leave to amend.

### B.  Section 1983

Plaintiff asserts a section 1983 claim under four theories: (1) violation of the Takings Clause of the Fifth Amendment, (2) violation of substantive due process under the Fourteenth Amendment; (2) violation of procedural due process under the Fourteenth Amendment; and (3) violation of equal protection under the Fourteenth Amendment.  FAC ¶¶ 73-82.  He alleges that Neal, Lockaby, and the Planning Commission were acting under color of law.  *Id.* at ¶ 74.  He also alleges that Defendants acted pursuant to "a policy or custom of [the] Town of depriving permit holders of their rights without a hearing through the actions of those with final decision making authority," and that the Town failed to property train its personnel and the Planning Commission in how and when to how and when to suspend building permits, issue OSWs and green tags, and accept appeals.  *Id.* at ¶¶ 80-82.  Defendants move to dismiss for failure to state a constitutional violation.  Defendants also argue that Plaintiff fails to meet the *Monell* pleading standards for municipal liability.  Mot. 20-22.

As with the takings claim, Plaintiff does not identify how each specific Defendant is liable under section 1983.  In addition, Plaintiff does not specify which Defendants are subject to *Monell* liability or under what theory of *Monell* they would be liable.  The parties' briefs do not elucidate this point.  This alone justifies dismissal of the section 1983 claim with leave to amend.  To move the case forward, for purposes of this order, the court construes the FAC as alleging a violation of section 1983 by Lockaby as well as municipal liability against the Town.

As previously held, Plaintiff fails to state a Fifth Amendment takings claim.  The corresponding section 1983 claim is therefore dismissed with limited leave to amend consistent with the court's rulings on the Takings Clause, above.

The court now turns to Plaintiff's Fourteenth Amendment claims.  The Due Process Clause provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV.  Plaintiff asserts both procedural and substantive due process claims, as well as a violation of the equal protection clause.

### 1. Procedural Due Process

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist*., 149 F.3d 971, 982 (9th Cir. 1998).

The FAC does not specify the "liberty or property interest" allegedly deprived in violation of due process.  FAC ¶ 76.  Plaintiff's opposition only discusses his interest in the Permit. Therefore, the court addresses Plaintiff's procedural due process claim with respect to the suspension of the Permit.

As discussed above, Plaintiff has not demonstrated a vested interest in the Permit under the Fifth Amendment.  However, "property for purposes of the Due Process Clause can be different from property for purposes of the Takings Clause."  *City of Oakland v. Abend*, No. C-07-2142 EMC, 2007 U.S. Dist. LEXIS 53186, at *13 (N.D. Cal. July 12, 2007); *see also Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 323 (5th Cir. 2022) ("there's a big difference between saying that something is property for purposes of procedural due process and saying that it is property for purposes of the Takings Clause"); *Pro-Eco v. Bd. of Comm'rs*, 57 F.3d 505, 513 (7th Cir. 1995) ("The Due Process Clause . . . recognizes a wider range of interests as property than does the Takings Clause.").

The Due Process Clause protects interests that are "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  "Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks and citation omitted).  "Resolution of the federal issue begins . . . with a determination of what it is that state law provides."  *Id.*  If the state law "imposes significant limitations on the discretion of the decision maker," then the plaintiff has a legitimate claim of

entitlement that triggers constitutional due process rights.  *Gerhart v. Lake Cty. Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2010).  In contrast, a state law that gives the government broad discretion to grant or revoke a permit does not create an entitlement to the permit that warrant due process protections.  *Id.* at 1020.  For example, in *Groten,* the court found that the state licensing agency was required to issue a license if the applicant met certain requirements; the licensing agency had no discretion because the statute used "the mandatory term 'shall.'"  *Groten v. California*, 251 F.3d 844, 850 (9ᵗʰ Cir. 2001)).  The court found that a plaintiff who met those requirements had a legitimate claim of entitlement to the license.  *Id.*  By contrast, in *Bateson,* the court found that the municipal ordinance gave the City Council discretion to approve, conditionally approve, or reject a minor plat, so the plaintiff did not have a legitimate claim of entitlement to approval of his minor plat application.  *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988).  "A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government."  *Gerhart*, 637 F.3d at 1020.

Neither party briefs whether Plaintiff has sufficiently alleged a claim of entitlement to the Permit that triggers the protection of the Due Process Clause.  Instead, they appear to rely on their arguments discussed above regarding vested interests under the Takings Clause.  These are not the same thing.  Again, it is not the court's job to figure out the parties' unstated arguments.  As Plaintiff has not presented argument to support that he has alleged a claim of entitlement triggering due process protection, the court grants the motion to dismiss Plaintiff's due process claims with leave to amend.

To move the case forward, the court continues to analyze the merits of Plaintiff's due process claims by assuming that Plaintiff will be able to plead an interest protected by the Due Process Clause.  Plaintiff's procedural due process claims can be split into three events: 1) the decision to suspend the Permit in August 2023 (FAC ¶¶ 38-42), 2) the January 2024 suspension of the Permit (FAC ¶ 54), and 3) the February 2024 suspension of the Permit (FAC ¶ 62).

### a.    August 2023 Suspension

The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."  *Mathews v. Eldridge*, 424 U.S. 319, 333

(1976).  Plaintiff alleges he was not afforded a hearing before his Permit was suspended in August 2023.  FAC ¶ 38-39.  Defendants argue this issue is "moot" because Defendants subsequently held two hearings on the suspension of Plaintiff's Permit.  Reply 11.  However, these were both post-deprivation hearings (one on January 11, 2024, and one on February 29, 2024).  FAC ¶¶ 54, 62.  Defendants do not address Plaintiff's damages claim for the initial violation when his Permit was suspended without a pre-deprivation hearing in August 2023.

Defendants next cite *Hudson v. Palmer*, 468 U.S. 517 (1984) for the proposition that "[e]ven intentional deprivations of property rights do not violate procedural due process as long as adequate state post-deprivation remedies are available."  Mot. 20.  Defendants misapply *Hudson.*  The Supreme Court has clarified that *Hudson* does not apply if: "(1) the deprivation of property was not unpredictable, (2) a pre-deprivation process was not impossible and (3) the improper conduct was not 'unauthorized.'"  *Mi Pueblo San Jose, Inc. v. City of Oakland*, No. C-06-4094 VRW, 2006 WL 2850016, at *5 (N.D. Cal. Oct. 4, 2006) (citing *Zinermon v. Burch*, 494 U.S. 113, 129 (1990)).  Plaintiff argues he has sufficiently alleged that the Permit suspension was not an unpredictable, unauthorized act, and that a pre-deprivation process was possible.  Opp'n 18-19.  Defendants do not address this point on reply and thereby concede it.

Assuming that Plaintiff can plead a property interest in the Permit that is protected by due process, he has adequately pleaded a procedural due process claim against Lockaby regarding the August 2023 suspension of the Permit.

**b.    Suspensions After January February 2024 Hearings**

Plaintiff asserts that the January and February 2024 hearings also violated due process.  Specifically, he argues that at each of these hearings, he did not have the right to "confront and cross-examine witnesses," and there was "an unreasonable risk of appearance of bias" in the tribunal.  Opp'n 17-18.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such

1   procedural protections as the particular situation demands." *Id.* at 334 (citing *Cafeteria Workers v.*

2   *McElroy*, 367 U.S. 886, 895 (1961); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  The court

3   considers three factors to determine whether procedures were sufficient: "First, the private interest

4   that will be affected by the official action; second, the risk of an erroneous deprivation of such

5   interest through the procedures used, and the probable value, if any, of additional or substitute

6   procedural safeguards; and finally, the Government's interest, including the function involved and

7   the fiscal and administrative burdens that the additional or substitute procedural requirement

8   would entail." *Id.* at 335.

9          Plaintiff asserts that due process required the right to cross-examine witnesses for the

10   January and February 2024 hearings.  FAC ¶¶ 55, 62.  He cites *Goldberg*, which states: "In almost

11   every setting where important decisions turn on questions of fact, due process requires an

12   opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254,

13   269 (1970).  *Goldberg* does not propose a bright-line rule.  The fundamental inquiry for due

14   process depends on the three factors identified in *Mathews*: the private interest affected, the risk of

15   an erroneous deprivation, and the government's interest.  *Mathews*, 424 U.S. at 335.  Here, the

16   FAC does not support a reasonable inference that the January and February 2024 hearings

17   involved important decisions that turned on questions of fact.  Therefore, it is not clear that due

18   process required the opportunity for Plaintiff to cross-examine witnesses at either hearing.

19          Plaintiff also contends that he was deprived of a fair hearing in both instances because of

20   an appearance of bias.  He alleges that attorneys from the same law firm represented both the party

21   advocating for suspension of the permit and the supposedly neutral arbitrator.  *Id.* at ¶ 56t.  FAC

22   ¶¶ 56, 63.  "[A] 'fair trial in a fair tribunal is a basic requirement of due process.'" *Withrow v.*

23   *Larkin*, 421 U.S. 35, 46 (1975) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).  "In pursuit of

24   this end, various situations have been identified in which experience teaches that the probability of

25   actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."

26   *Id.* at 47.  The parties only cite California cases finding that the sharing of an attorney between an

27   advocate and the decisionmaker creates the appearance of bias such that due process is violated.

28   "The California court's resolution of a federal constitutional question is persuasive but is not

United States District Court
Northern District of California

1   binding on us." *William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 ex rel. Orange*

2   *Cnty.*, 695 F.3d 960, 963 (9th Cir. 2012). Under federal law, the standard governing this type of

3   claim may well be different. *See id.* (rejecting the plaintiff's arguments because "even if there

4   were some evidence that [the Board's legal advisor] was biased . . . that evidence might not be

5   sufficient to conclude that the adjudicating body—the Board itself—was biased"); *see also*

6   *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1236 (N.D. Cal. 2019), aff'd,

7   100 F.4th 1059 (9th Cir. 2024). At oral argument, neither party was able to explain why the court

8   should rely on state court cases in deciding this issue of federal law. The court will not expend its

9   resources analyzing issues the parties failed to analyze themselves.

10      The section 1983 claim for violation of procedural due process regarding the January and

11  February 2024 hearings is dismissed with leave to amend.

12              **2.    Substantive Due Process**

13      As discussed above, Plaintiff has not presented argument to support that he has pleaded a

14  property interest triggering due process protection. *See Gerhart*, 637 F.3d at 1019. Again, to

15  move the case forward, the court analyzes Plaintiff's substantive due process claim by assuming

16  he can plead a legitimate claim of entitlement.

17      As a threshold matter, Defendants argue that Plaintiff's substantive due process claim is

18  "subsumed" by his takings claim. Mot. 18. The Fifth Amendment precludes a due process

19  challenge "only if the alleged conduct is actually covered by the Takings Clause. . . . [A] claim of

20  arbitrary action is not such a challenge." *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d

21  851, 855 (9th Cir. 2007). Plaintiff brings a due process challenge against the arbitrariness of

22  Defendants' conduct; this claim is not subsumed by the takings claim. *See* FAC ¶ 78 ("[T]he

23  suspension of the Permit, and the refusal to issue the green tag . . . were arbitrary and

24  unreasonable.").

25      A "regulation that fails to serve any legitimate governmental objective may be so arbitrary

26  or irrational that it runs afoul of the Due Process Clause." *Ballinger v. City of Oakland*, 398 F.

27  Supp. 3d 560, 575 (N.D. Cal. 2019), *aff'd,* 24 F.4th 1287 (9th Cir. 2022) (quoting *Lingle v.*

28  *Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005)). The plaintiff's burden on such a claim is

United States District Court
Northern District of California

"extremely high." *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997). "When executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Plaintiff argues that the suspension of his Permit and refusal to issue the Green Tag were arbitrary because he had "worked in compliance with the issued Permit, applied to make changes to the Project in compliance with the law and received assurances from Lockaby that he could continue to work on the Project." Opp'n 19. Nowhere in the FAC does it state that Plaintiff ever applied to make changes to the Project in accordance with Lockaby's request. FAC ¶¶ 24-26, 31. In addition, it appears that Plaintiff made unapproved changes to the Project, which would violate the issued Permit. On a motion to dismiss, Plaintiff must clearly allege facts from which the court may draw a reasonable inference that Defendants' actions had no "legitimate governmental objective," such as bringing Plaintiff into compliance with the terms of the Permit. *See Ballinger*, 398 F. Supp. 3d at 575. Plaintiff's section 1983 claim for violation of substantive due process is dismissed with leave to amend.

### 3. Equal Protection

The FAC alleges an equal protection claim on grounds that "[t]he actions of [Defendants][10], the suspension of the Permit, and the refusal to issue the green tag" were taken "in retaliation" of Plaintiff exercising his rights. FAC ¶ 79. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Typically, claims under the Equal Protection

---

[10] Once again, Plaintiff does not explain which Defendants violated his equal protection rights, or what they did to be liable.

1    Clause challenge "governmental classifications that 'affect some groups of citizens differently

2    than others.'"  *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v.*

3    *Maryland*, 366 U.S. 420, 425 (1961)).

4          Plaintiff argues a "class-of-one" theory of equal protection, which does not depend on a

5    suspect classification such as race or gender.  Instead, a class-of-one claim arises where the

6    plaintiff alleges that a state or local government "(1) intentionally (2) treated [plaintiff] differently

7    than other similarly situated [individuals or groups], (3) without a rational basis."  *Seaplane*

8    *Adventures, LLC v. Cnty. of Marin,* 71 F.4th 724, 729 (9th Cir. 2023) (quoting *Gerhart v. Lake*

9    *Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011)).  "[T]he rational basis prong of a 'class of one' claim

10   turns on whether there is a rational basis for the distinction, rather than the underlying government

11   action."  *Id.* at 730 (emphasis in original) (internal quotation marks and citation omitted).[11]

12         Plaintiff has not alleged a class-of-one claim because the FAC does not identify a

13   "similarly situated" group or individual treated differently by Defendants.  Individuals or groups

14   "allegedly treated differently in violation of the Equal Protection Clause are similarly situated only

15   when they are 'arguably indistinguishable.'"  *Erickson v. County of Nevada ex rel. Bd. of*

16   *Supervisors*, 607 F. App'x 711, 712 (9th Cir. 2015) (quoting *Engquist v. Or. Dep't of Agric.*, 553

17   U.S. 591, 601 (2008)).  Plaintiff asserts that he has been treated differently than "other permit

18   holders in Fairfax."  Opp'n 21; FAC ¶ 46.  But the FAC does not plausibly allege that Plaintiff is

19   "arguably indistinguishable" from other Fairfax permit holders.  The FAC recognizes that Plaintiff

20   made unapproved changes to his construction plans, and apparently refused to comply with

21   Lockaby's request to submit his new plans to the Planning Commission.  FAC ¶¶ 24-26.  Under

22   such circumstances, a rational basis exists for Defendants to treat Plaintiff differently than other

23   Fairfax permit holders who fully comply with the terms of their permits.

24

25   ───────────────
     [11] Plaintiff cites *Duperrault* for his argument that an equal protection claim may be stated where
26   the plaintiff has shown "deep-seated animosity," such as when "a powerful public official pick[s]
     on a person out of sheer vindictiveness," or when an official acts "for the sole and exclusive
27   purpose of exacting retaliation and vengeance against" the plaintiff.  *Bell v. Duperrault*, 367 F.3d
     703, 709 (7th Cir. 2004) (citing *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995)).  *Duperrault*
28   is a Seventh Circuit case which is not binding authority on this court.  The court must apply Ninth
     Circuit law.

Plaintiff bears a heavy burden even at the pleading stage to address each rational basis for differential treatment. *See Madden v. Commonwealth of Kentucky*, 309 U.S. 83, 88 (1940) ("The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it"). Plaintiff makes only a conclusory assertion that he, "out of vindictiveness," was treated "differently than all other permit holders." This falls far short.

Plaintiff's equal protection claim is dismissed with leave to amend.

### 4. *Monell* Liability

As previously stated, the court construes Plaintiff's FAC as bringing a *Monell* claim against the Town, and only reaches arguments pertaining to that claim. A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). A municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted). To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cnty. Of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where

24

1    "execution of a government's policy or custom, whether made by its lawmakers or by those whose

2    edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting

3    *Monell*, 436 U.S. at 694).  Second, "a local government can fail to train employees in a manner

4    that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or

5    different training is so obvious, and the inadequacy so likely to result in the violation of

6    constitutional rights, that the policymakers of the city can reasonably be said to have been

7    deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390

8    (1989)).  Finally, a municipality may be liable under section 1983 if "the individual who

9    committed the constitutional tort was an official with final policy-making authority or such an

10   official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802-

11   03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation

12   marks and citation omitted)).

13        Plaintiff argues that the Town may be held liable for a section 1983 violation under all

14   three *Monell* theories.  First, he asserts that an official with final policymaking authority either

15   caused the constitutional tort or ratified a subordinate's constitutional tort.  He argues that

16   Lockaby is an official with final policymaking authority, making the Town liable for his actions.

17   Opp'n 14.  He also argues that the Planning Commission has final decision-making authority, so

18   the Town is liable for the Planning Commission's actions as well as any actions it ratified.  *Id.*

19        "Whether a particular official has final policy-making authority is a question of state law."

20   *Jessen v. Cnty. of Fresno*, 808 F. App'x 432, 435 (9th Cir. 2020).  Lockaby was acting pursuant to

21   California Building Code 105.6, which grants the building official authority to suspend or revoke

22   a permit.  FAC ¶ 38.  However, "[t]he fact that a particular official—even a policymaking

23   official—has discretion in the exercise of particular functions does not, without more, give rise to

24   municipal liability based on an exercise of that discretion. . . . The official must also be

25   responsible for establishing final government policy respecting such activity before the

26   municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986).

27   The allegation that Lockaby had authority to suspend or revoke a permit does not support an

28   inference that he was responsible for establishing final government policy.

United States District Court
Northern District of California

25

United States District Court
Northern District of California

1    Plaintiff also asserts that the Planning Commission had final policymaking authority, but

2    cites nothing to support this conclusion.  Moreover, to the extent Plaintiff contends that the

3    Planning Commission ratified subordinate decisions, Plaintiff has not adequately pleaded the

4    elements of ratification.  "To show ratification, a plaintiff must prove that the 'authorized

5    policymakers approved a subordinate's decision and the basis for it,'" which accordingly requires,

6    "among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176

7    F.3d 1231, 1239 (9th Cir. 1999) (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)).

8    To state a *Monell* claim based on ratification, the complaint must allege that "authorized

9    policymakers" knew of and approved the officials' actions "before the alleged constitutional

10    violations ceased."  *See id.* at 1239.  Plaintiff has not clearly pleaded what the Planning

11    Commission allegedly ratified, let alone its knowledge of a constitutional violation before the

12    violation had ceased.  Opp'n 14 (stating vaguely that the Planning Commission ratified "[a]ny

13    actions taken described in the FAC").  In sum, Plaintiff has not pleaded *Monell* liability under a

14    final policymaker theory.

15    Plaintiff next asserts that the execution of the government's policy or custom inflicted the

16    injury.  He argues that a "reasonable inference from the FAC is that the Town's custom is to

17    illegally order the stoppage of work in order to coerce permit holders to submit changes to their

18    plans, even when not required."  Opp'n 14-15.  The only supporting fact identified by Plaintiff is

19    the Town's withholding of the Green Tag, which Town counsel informed Plaintiff's counsel was a

20    common tactic to "extract concessions from permit holders."  FAC ¶ 33.  Plaintiff never alleges

21    that the withholding of the Green Tag caused him to stop work—in fact, he continued to work on

22    the Project for weeks despite not having a Green Tag.  *Id.* at ¶ 34.  According to the FAC, Plaintiff

23    stopped work because of the OSW.  Plaintiff has not adequately pleaded a "policy or custom"

24    *Monell* violation.

25    Finally, Plaintiff argues that "the Town failed to adopt clear policies and failed to properly

26    train either its personnel . . . or the Planning Commission in how and when to suspend building

27    permits, issue red and green tags, and/or accept appeals."  Opp'n 15 (citing FAC ¶¶ 32, 73).  This

28    is conclusory.  Municipal liability based on a failure to train requires proof that "policymakers are

26

on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61.  No such allegations are present here.  Moreover, Plaintiff has not alleged facts other than his own experience that could have put the Town on notice of a failure in their training program.  *See Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022) ("an inadequate training policy itself cannot be inferred from a single incident").

Plaintiff has failed to plead *Monell* liability.  The section 1983 claim for municipal liability is dismissed with leave to amend.

**C.  Inverse Condemnation**

Plaintiff brings a takings claim under the California Constitution article I, section 19. Similar to the Fifth Amendment, the California Constitution states: "Private property may be taken or damaged for a public use and only when just compensation . . . has first been paid to, or into court for, the owner." Cal. Const. art. I, § 19.

"While the Takings Clause of the California Constitution does 'protect[ ] a somewhat broader range of property values than' its federal counterpart, the two clauses have generally been interpreted the same by the California Supreme Court." *Wiese v. Becerra*, 306 F. Supp. 3d 1190, 1198 (E.D. Cal. 2018); *see also San Remo Hotel, L.P. v. City & County of San Francisco*, 27 Cal. 4th 643, 664 (2002) (noting that art. I § 19 of the California Constitution includes damage to property, but that aside from this difference, "we appear to have construed the clauses congruently").  As discussed above, Plaintiff has not pleaded a federal Takings Clause claim.

Plaintiff's inverse condemnation claim under the California Constitution is dismissed with limited leave to amend consistent with the court's rulings on the federal Takings Clause.[12]

**D.  Negligence**

Tort claims against California public employees and entities are governed by statute.  Cal. Gov. Code § 815.  "The general rule is that an employee of a public entity is liable for his torts to

---

[12] At oral argument, Plaintiff cited *Trans-Oceanic* as holding that a violation of due process is sufficient to state a takings claim under the California Constitution.  As discussed in footnote 8, this is incorrect.

the same extent as a private person . . . and the public entity is vicariously liable for any injury

which its employee causes . . . to the same extent as a private employer." *Societa Per Azioni De*

*Navigazione Italia v. City of Los Angeles,* 31 Cal. 3d 446, 463 (1982); *see* Cal. Gov. Code §

815.2(a).  A public entity may be under a "mandatory duty" to protect against particular kinds of

injuries, in which case the public entity is liable for injuries of that kind proximately caused by its

failure to discharge the mandatory duty.  Cal. Gov. Code § 815.6.  However, a public employee is

immune from liability if the injury resulted from the employee's "exercise of the discretion vested

in [the employee], whether or not such discretion be abused."  Cal. Gov. Code § 820.2.

Plaintiff's negligence claim is based solely on Lockaby's refusal to issue a Green Tag.

FAC ¶ 94.  Defendants argue that the Green Tag is a "permit, license, certificate, approval, order,

or similar authorization," and under California statute, public entities and employees are immune

from liability for any injury caused by the failure or refusal to issue such authorizations.  Cal. Gov.

Code §§ 818.4, 821.2.  Additionally, Plaintiff fails to plead facts establishing that issuance of a

Green Tag is a mandatory duty rather than an exercise of the discretion vested in Lockaby.

Plaintiff's sole response is to cite Cal. Gov. Code § 65589.5(j), which requires written justification

before a local agency disapproves a "proposed housing development project" or imposes a

condition that the project be developed at a lower density.  This statute is clearly inapplicable here.

Plaintiff has not alleged that he has proposed a housing development project.

Plaintiff's negligence claim is dismissed without leave to amend.

**E.  Writ of Mandate**

Plaintiff's fifth claim is under Cal. Civ. Pro. Code § 1085(a), which states: "A writ of

mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to

compel the performance of an act which the law specially enjoins."  Plaintiff requests that the

court compel the Town to issue the Green Tag, reinstate the Permit, and/or accept Plaintiff's

appeal of the January 2024 decision to suspend his Permit.  FAC ¶ 108.  Defendants argue that the

court should decline to exercise supplemental jurisdiction over Plaintiff's claim for writ of

mandate.

Federal district courts have original jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, the court has original jurisdiction because Plaintiff brings claims under the U.S. Constitution. As such, the court also has supplemental jurisdiction "over all claims that are so related to claims in the action in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A single case or controversy exists for purposes of Section 1367 if the state and federal claims "derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

However, "federal courts have generally been reluctant to exercise supplemental jurisdiction over claims for writs of mandate under California law." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1184 (E.D. Cal. 2013). While exercising supplemental jurisdiction is not "prohibited," mandamus proceedings "are uniquely in the interest and domain of the state courts," such that "[a] federal court's exercise of jurisdiction over a state mandamus issue raises serious considerations regarding comity and federalism." *Id.* (citing *Clemes v. Del Norte County Unified School District,* 843 F. Supp. 583, 596 (N.D. Cal. 1994), *overruled on other grounds, Maynard v. City of San Jose,* 37 F.3d 1396, 1403 (9th Cir. 1994)). "Where a state law claim is inextricably tied to a request for a writ of mandamus, a federal district court appropriately declines supplemental jurisdiction." *Id.* at 1184–85.

The court declines to exercise supplemental jurisdiction over Plaintiff's claim for writ of mandamus. As pleaded in the FAC, the legal basis for the writ is unclear, and at oral argument, Plaintiff's counsel could not cogently explain why the court should retain jurisdiction over it. It is also not clear if adjudicating the writ will raise novel or complex issues of state law. Exercising its discretion under 28 U.S.C. § 1367(c), the court declines to accept supplemental jurisdiction.

The claim for writ of mandamus is dismissed without prejudice to Plaintiff seeking relief elsewhere.

**F. Bane Act**

Plaintiff's sixth claim is under California Civil Code Section 52.1, also known as the Bane Act. The act authorizes "an action for injunctive and other equitable relief where a person,

29

1    whether or not acting under color of law, interferes or attempts to interfere, 'by threat,

2    intimidation, or coercion,' with the exercise or enjoyment by any individual or individuals of

3    rights secured by state or federal law." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 66

4    (2015), *as modified on denial of reh'g* (Mar. 6, 2015) (citing Cal. Civ. Code § 52.1(a)).  To make a

5    claim under the Bane Act, a plaintiff must show "(1) intentional interference or attempted

6    interference with a state or federal constitutional or legal right, and (2) the interference or

7    attempted interference was by threats, intimidation or coercion." *Id.* at 67.

8         Defendants argue that, even if Plaintiff has adequately alleged interference with his

9    protected rights, Plaintiff failed to plead that the interference was by "threats, intimidation or

10   coercion."  Mot. 24-25; Reply 16.  Plaintiff responds that he has provided a long list of specific

11   facts which "made [him] fearful that [the Town] would and did deprive him of his rights."  Opp'n

12   23.

13        Plaintiff provides no authority for his assertion that the Bane Act only requires the plaintiff

14   to be "fearful" of a deprivation of rights.  The Bane Act makes clear that "[s]peech alone is not

15   sufficient to support an action brought pursuant to [the Act], except upon a showing that the

16   speech itself threatens violence . . . and the person or group of persons against whom the threat is

17   directed reasonably fears that, because of the speech, violence will be committed against them or

18   their property."  Cal. Civ. Code § 52.1(k).  None of the examples of Defendants' speech cited by

19   Plaintiff threaten violence.  Nor do they indicate either an intent to interfere with Plaintiff's rights

20   or coercion beyond the allegedly wrongful conduct itself.  *See Allen*, 234 Cal. App. 4th at 69

21   (dismissing a Bane Act claim where there was "an allegedly unlawful arrest but no alleged

22   coercion beyond the coercion inherent in any arrest"); *Cuviello v. City & Cnty. of San Francisco*,

23   940 F. Supp. 2d 1071, 1103 (N.D. Cal. 2013) ("a threat of false arrest does not constitute a Bane

24   Act violation of Plaintiffs' right to be free from false arrest"); *Ordonez v. Stanley*, 495 F. Supp. 3d

25   855, 866 (C.D. Cal. 2020) ("Plaintiff must allege defendants had a specific intent to violate the

26   rights of plaintiff.").

27        Plaintiff cannot allege a claim under the Bane Act.  This claim is dismissed without leave

28   to amend.

30

United States District Court
Northern District of California

## IV.    CONCLUSION

As a general matter, Plaintiff's claims all share a common flaw in that the FAC fails to identify the actions taken by each specific Defendant which would make each of them liable. Plaintiff shall amend the complaint to clearly allege which claims are being brought against each Defendant based on which specific acts.

Plaintiff's Takings Clause, Fifth Amendment, and inverse condemnation claims are dismissed with limited leave to amend to state a claim regarding Plaintiff's interest in the parts of the construction previously approved by the Permit.  These claims are otherwise dismissed without leave to amend.

Plaintiff's section 1983 claim for municipal liability is dismissed with leave to amend.  The section 1983 claims for violation of substantive due process, procedural due process, and equal protection are dismissed with leave to amend.

Plaintiff's negligence claim is dismissed without leave to amend.

Plaintiff's request for writ of mandate is dismissed without leave to amend.

Plaintiff's Bane Act claim is dismissed without leave to amend.

Plaintiff is granted leave to file a second amended complaint by **September 9, 2024**. Plaintiff must plead his best case.


**IT IS SO ORDERED.**

Dated: August 23, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

31